UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ASHLEY PRINCE TRUEHILL | * | CIVIL ACTION |
| VERSUS | * | NO. 21-1842 |
| LAFOURCHE PARISH ET AL. | * | SECTION "I" (2) |

## REPORT AND RECOMMENDATION

This is a civil action brought by Plaintiff Ashley Prince Truehill ("Truehill") under 42 U.S.C. § 1983 against Lafourche Parish and Sheriff Craig Webre.  Plaintiff is a prisoner currently incarcerated in Lafourche Parish Correctional Complex in Thibodaux, Louisiana.  He filed this § 1983 complaint *pro se* as an *in forma pauperis* plaintiff after he was attacked by another inmate with whom Plaintiff contends that he should not have been housed.  ECF No. 1, ¶ IV, at 4.  Plaintiff seeks monetary compensation as well as release from incarceration.  *Id.* ¶ V, at 5.  This matter was referred to the undersigned magistrate judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B); E.D. La. L.R 73.2(A).

## I.    BACKGROUND

### A.    Factual Allegations

Plaintiff Ashley Prince Truehill is a pretrial detainee in the Lafourche Parish Correctional Complex ("LPCC") who filed a §1983 suit *pro se* and *in forma pauperis*. ECF No. 1, ¶ III(A), at 3.  Truehill names Lafourche Parish and Sheriff Craig Webre as defendants, alleging that he is a pretrial detainee who should not have been housed with state inmate (Troy Phar) who attacked him.  *Id.* ¶ IV, at 4.  Plaintiff seeks monetary damages and release from jail.  *Id.* ¶ V, at 5.

In response to this Court's § 1983 Facts Order (ECF No. 5), in addition to Sheriff Webre, Plaintiff identifies six other officers whom he contends violated his constitutional rights based on

the facts alleged in this lawsuit: (1) Warden Cantrelle Davis; (2) Capt. Carla Beck; (3) Lt. Neil Ledet; (4) Lt. Stanley Jones; (5) Lt. Brett Exnicious; and (6) Lt. Craig Dennison.  ECF No. 7, at 1-2.  He also confirms that he is a pretrial detainee.  *Id.* at 2.  Plaintiff contends that LPCC does not split up Department of Correction ("DOC") convicted inmates from pre-trial detainees.  *Id.* at 3-4, subparagraphs (c), (e), and (h).  Plaintiff further asserts that he would not have been attacked had he not been housed with a DOC inmate.  *Id.* at 4, subparagraph (g).

      **B.**     ***Spears* Hearing Testimony**

On December 13, 2021, I conducted a telephone conference in this matter, with Plaintiff appearing *pro se*.  Plaintiff was sworn and testified for all purposes permitted by *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), *overruled on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989), and its progeny.

Plaintiff confirmed that he is currently a pretrial detainee.  He testified that he has previously been convicted and served time in prison on two prior occasions.  In 2004 or 2005, he was convicted of purse snatching and felony theft, and in 2014, he was convicted for distribution of crack cocaine.  The current charges for which he is incarcerated as a pretrial detainee are for home invasion/unauthorized entry of a dwelling, stalking, aggravated flight from officer, obstruction of protective order, DUI and perhaps another charge.

Plaintiff testified that he was arrested on April 14, 2021, after which he was initially placed in dorm E-4.  During his time in E-4, he was involved in several incidents for which he was placed in the Special Housing Unit ("SHU"), including at least one incident where plaintiff contends he was "jumped" by another inmate.  Typically, Plaintiff would be returned to the same dorm (E-4) after his SHU placement.  On one occasion, however, around Hurricane Ida which was in late August 2021, when he was leaving the SHU, the E-4 dorm was full, so he was placed in dorm E-

3.  Plaintiff confirmed that, before placement in E-3, he was asked a series of questions, including whether he had any enemies in E-3.  Plaintiff replied that he did not have any enemies there.

Sometime after his arrival to dorm E-3, Plaintiff noticed inmate Troy Phar watching him.  In an effort to "break the ice," Plaintiff approached Phar and asked if his name was "Black Boy."  Phar responded by asking "Do you know me?," to which Plaintiff responded, "No, but I've heard your name."  As Plaintiff turned to leave, Phar hit him from behind, knocked him to the ground, and began stomping on him, after which Plaintiff was taken to the hospital.

Plaintiff testified that he had not been threatened by Phar before the incident and was not aware that Phar would attack him.  He also confirmed that he had no information to suggest that anyone with the facility was aware that Phar was going to attack him, that placing him in E-3 would endanger him, or that anyone had knowledge that Phar was a danger to Plaintiff.  Plaintiff did not have any information as to who made the decision to place him in E-3 or what factors were considered in that placement other than E-4 was full at the time of his release from SHU.

Plaintiff stated that he named Sheriff Webre as a defendant because he is the Lafourche Parish Sheriff, and as such, is the supervisor over everyone.  He reiterated that the basis of his complaint is that, as a pretrial detainee, he should not have been housed with someone who had already been convicted.  He asserts that the costs for housing pre-trial and convicted inmates are different, so if they could be housed together, the costs would not be different.  Plaintiff also asserts that the law and/or inmate handbook states that DOC and pretrial inmates cannot be housed together.  Plaintiff's § 1983 claim is thus premised solely on his housing placement.

Plaintiff contends that inmate Phar was incarcerated for a drug court violation, which to him evidences that Phar had been convicted of a crime.  In response to Plaintiff's grievance, the

TPCC responded that Phar had not been convicted of a crime.[1]

## II.    LEGAL STANDARDS

### A.    Statutorily Required Screening

A prisoner's *pro se* complaint must be screened by the court as soon as practicable after docketing.[2]  Complaints by prisoners must be dismissed upon review if they are frivolous and/or fail to state a claim.[3]  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"[4]

"A federal court may dismiss a claim *in forma pauperis* 'if satisfied that the action is frivolous or malicious.'"[5]  A claim is frivolous if it "lacks an arguable basis in law or fact."[6]  A claim lacks an arguable basis in law if it is "'based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"[7]  A factually frivolous claim alleges only facts that are "'clearly baseless,' . . . are 'fanciful,' 'fantastic,' and 'delusional' . . .  [or] rise to the level of the irrational or wholly incredible . . . ."[8]  A court may not dismiss a claim simply because the facts are "unlikely."[9]

---

[1] For purposes of the following analysis, the Court accepts as true Plaintiff's assertion that inmate Phar is a convicted inmate despite the TPCC dispute of that fact in its grievance response.

[2] 28 U.S.C. § 1915A(a); *Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998).

[3] 28 U.S.C. § 1915A(b)(1); *see also id.* § 1915(e)(2)(B).

[4] *Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

[5] *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).

[6] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998) (citation omitted); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994) (citing *Denton v. Hernandez*, 504 U.S. 25, 31 (5th Cir. 1992)).  The law "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  *Macias*, 23 F.3d at 97 (quoting *Neitzke*, 490 U.S. at 327).

[7] *Davis*, 157 F.3d at 1005 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).

[8] *Moore v. Mabus*, 976 F.2d 268, 270 (5th Cir. 1992) (citation omitted).

[9] *Id.*

A complaint fails to state a claim on which relief may be granted when the factual allegations do not rise above a speculative level, with the assumption that all factual allegations in the complaint are true, even if doubtful.[10]  The Supreme Court clarified the standard for a Rule 12(b)(6) motion in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  To avoid dismissal, a complaint must contain sufficient factual matter to state a claim to relief that is *plausible* on its face (i.e., the factual allegations must "be enough to raise a right to relief above the speculative level").[11]  If the "facts" alleged are "merely consistent" with those minimally required to establish liability, the complaint "stops short of the line between possibility and plausibility."[12]  "Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim."[13]

Although the court must accept all well-pleaded facts as true and consider the complaint in the light most favorable to the plaintiff, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[14]  The court may consider not only the allegations but also any documents attached to the complaint, referenced documents that are central to the claim, and documents that are part of the public record or subject to judicial notice.[15]

---

[10] *Garrett v. Thaler*, 560 F. App'x 375, 377 (5th Cir. 2014) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[11] *Bell Atl.*, 550 U.S. at 555, 570.

[12] *Iqbal,* 556 U.S. at 678.

[13] *Roy v. Cobb*, No. 20-0167, 2020 WL 2045791, at *2 (W.D. La. April 7, 2020) (citing *Bell Atl.*, 550 U.S. at 556).

[14] *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citation omitted); *see also SGK Props., L.L.C. v. U.S. Bank Nat'l Ass'n for Lehman Bros. Small Balance Com. Mortg. Pass-Through Certificates, Series 2007-3*, 881 F.3d 933, 944–45 (5th Cir. 2018) (holding conclusory fraud allegations that the defendant intended plaintiff to act upon representations and plaintiff acted in reliance on representations insufficient to withstand Rule 12(b)(6) challenge).

[15] *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (stating that a court may rely on the complaint, its proper attachments, documents incorporated by reference, and matters of judicial notice).

When an allegation is contradicted by the contents of an attached exhibit, the exhibit (not the allegation) controls.[16]

In comparing a dismissal for failure to state a claim under 28 U.S.C. § 1915(e) and Fed. R. Civ. P. 12(b)(6), *Neitzke v. Williams*, 490 U.S. 319 (1989), held that a claim which is dismissed under one rule does not "invariably run afoul" of the other.[17]   If an *in forma pauperis* complaint lacks even an arguable basis in law, dismissal is appropriate under both Rule 12(b)(6) and §1915(e).[18]   "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under [§ 1915(e)'s] frivolousness standard is not."[19]

A prisoner's *in forma pauperis* complaint that fails to state a claim may be dismissed *sua sponte* at any time.  28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1).  When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile.[20]   A court in its discretion may deny a motion to amend for futility if the amended complaint would fail to state a claim upon which relief could be granted.[21]   The decision to grant or deny leave to amend "is entrusted to the sound discretion of the district court."[22]   The court

---

[16] *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citation omitted).
[17] *See also Moore*, 976 F.2d at 269 (quoting *Neitzke*, 490 U.S. at 326) (citing 28 U.S.C. § 1915(d) (current version at 28 U.S.C. § 1915(e))).
[18] *Id.*
[19] *Id.*
[20] *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (citation omitted) ("[Rule 15(a)] evinces a bias in favor of granting leave to amend."); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").
[21] *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016).
[22] *Pervasive Software Inc. v. Lexware GMBH & Co.*, 688 F.3d 214, 232 (5th Cir. 2012).

must also "'liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel . . . .'"[23]

### B.  The *Spears* Hearing

The initial screening of a *pro se* prisoner's claim includes a review of the complaint and testimony from a *Spears* hearing.[24]    The purpose of a *Spears* hearing is to dig beneath the conclusory allegations of a *pro se* complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.[25]    "[T]he *Spears* procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."[26]  The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Rule 12(e).[27]  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."[28]

The court may make only limited credibility determinations in a *Spears* hearing, and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.[29]  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  After a *Spears* hearing and its concurrent opportunity to expound the claim, a complaint may be dismissed for failure to state a claim or as legally frivolous if it lacks an arguable basis in law[30] or "as factually frivolous only if

---

[23] *Smith v. Lonestar Constr., Inc.*, 452 F. App'x 475, 476 (5th Cir. 2011); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).
[24] *Spears v. McCotter*, 766 F.2d 179, 180 (5th Cir. 1985) (affirming magistrate court's dismissal of prisoner's claim based on complaint and evidentiary hearing).
[25] *Id.*
[26] *Davis v. Scott*, 157 F.3d 1003, 1005–06 (1998).
[27] *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) (citing *Spears*, 766 F.2d at 181–82); *Adams v. Hansen*, 906 F.2d 192, 194 (5th Cir. 1990) (citation omitted).
[28] *Spears*, 766 F.2d at 182.
[29] *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Cay v. Estelle*, 789 F.2d 318, 326–27 (5th Cir. 1986), *overruled on other grounds by Denton v. Hernandez*, 504 U.S. 25 (1992); *Wilson*, 926 F.2d at 482).
[30] *Jackson v. Vannoy*, 49 F.3d 175, 176–77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992)

the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."[31]

## III.    LAW AND ANALYSIS

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any ... person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.[32]

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[33]  Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[34]

To recover under § 1983, the plaintiff must identify both the constitutional violation and the responsible person acting under color of state law.[35]  Thus, a plaintiff must satisfy three elements to establish § 1983 liability:

(1) deprivation of a right secured by the U.S. Constitution or federal law,

(2) that occurred under color of state law, and

(3) was caused by a state actor.[36]

---

[31] *Moore*, 976 F.2d at 270.  This framework "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

[32] 42 U.S.C. § 1983.

[33] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

[34] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).

[35] *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).

[36] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted) (stating § 1983 imposes liability for violations of rights protected by the Constitution and not for violations of duties of care arising out of tort law).

In this case, even under the broadest reading of his claims,[37] Plaintiff's claims against Lafourche Parish, Sheriff Craig Webre, and the other named officers, as expounded by his § 1983 Response and *Spears* testimony, should be dismissed with prejudice under 28 U.S.C. § 1915(e)(2) and/or 42 U.S.C. § 1997e(c)(1) for the reasons set forth herein.

### A. __Claims Against Lafourche Parish__

Truehill names the Lafourche Parish as a defendant this case.  Claims against a parish governing body must be analyzed under the standards set forth in *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), which provides:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Accordingly, municipalities cannot be held liable for constitutional torts under § 1983 based on a vicarious liability or *respondeat superior* theory.[38]  Rather, a plaintiff must prove that "action pursuant to official municipal policy" caused their injury.[39]  Thus, to state a claim against a municipality under *Monell* and its progeny, a plaintiff must plead that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."[40]

As the Fifth Circuit has explained:

---

[37] The court must "liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel," *Smith v. Lonestar Constr., Inc.*, 452 F. App'x 475, 476 (5th Cir. 2011), *cert. denied*, 565 U.S. 1263 (2012) (quotation omitted); *Moore*, 30 F.3d at 620.

[38] *Burge v. Par. of St. Tammany*, 187 F.3d 452, 470–71 (5th Cir. 1999) (citing *Monell*, 436 U.S. at 691).

[39] *Three Legged Monkey, L.P. v. City of El Paso*, 652 F. App'x 236, 239 (5th Cir. 2016) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 691)); *Burge*, 187 F.3d at 471 (quoting *Monell*, 436 U.S. at 694); *see also Salazar-Limon v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quoting *Monell*, 436 U.S. at 694).

[40] *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021) (citing *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017)); *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.[41]

"A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."[42]  Rather, he must identify the policy or custom which allegedly caused the deprivation of his constitutional rights.[43]  Further, in Louisiana, the Parish government has *no* authority over the general management of the jail.[44]  Instead, the Parish government is responsible for the financing and physical maintenance of the jail building[45] or contracting with a health care provider to tend to the medical needs of the inmates.[46]

Truehill has not alleged that his constitutional rights were violated as a result of a Parish policy or custom, much less identified such a policy or custom.  The Parish cannot be held vicariously liable without a showing that a specific parish policy caused plaintiff some constitutional harm.  Therefore, his allegations fall short of what is required to state a proper claim

---

[41] *Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997) (emphasis added; citations, quotation marks, and brackets omitted).

[42] *Colle v. Brazos Cnty.*, 981 F.2d 237, 245 (5th Cir. 1993) (citation omitted); *see also Wetzel v. Penzato*, No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009) (citation omitted).

[43] *See, e.g., Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003); *Treece v. Louisiana*, 74 F. App'x 315, 316 (5th Cir. 2003); *Wetzel*, 2009 WL 5125465, at *3.

[44] *Jones v. St. Tammany Par. Jail*, 4 F. Supp. 2d 606, 613 (E.D. La. May 8, 1998) ("Sheriff's in Louisiana are final policy makers with respect to management of the jail.").

[45] *See* LA. REV. STAT. ANN. § 15:304 ("All expenses incurred in the different parishes of the state or in the city of New Orleans by . . . confinement . . . of persons accused or convicted of crimes . . . shall be paid by the respective parishes in which the offense charged may have been committed or by the city of New Orleans, as the case may be."); LA. REV. STAT. ANN. § 15:702 ("The governing authority of each parish shall be responsible for the physical maintenance of all parish jails and prisons."); LA. REV. STAT. ANN. § 33:4715 ("The police jury of each parish shall provide . . . a good and sufficient jail . . .")

[46] *Id*. § 15:703.

against Lafourche Parish.  His claims against the Parish should be dismissed pursuant to 28 U.S.C. § 1915, § 1915A and 42 U.S.C. § 1997e as frivolous and for failure to state a claim.

### B.  Claims Against Sheriff Webre and Other Officers

Plaintiff's Complaint names only Sheriff Webre, but his § 1983 Response identifies Warden Cantrelle Davis, Capt. Carla Beck, Lt. Neil Ledet, Lt. Stanley Jones, Lt. Brett Exnicious, and Lt. Craig Dennison as additional persons responsible for the alleged constitutional violation. *See* ECF Nos. 1, 7.  However, because Truehill's claims are frivolous, an amendment to include these officers would be futile and leave to do so should be denied.[47]

An individual defendant can only be liable under § 1983 if he was "personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation."[48]  Without an allegation of personal involvement, a supervisory official, like a sheriff or warden, cannot be held liable pursuant to § 1983 simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights.[49]  A plaintiff must instead establish that he suffered a constitutional violation or physical

---

[47] Amendments to pleadings are governed by Fed. R. Civ. Proc. 15(a), which states that leave to amend "shall be freely given when justice so requires."  District courts have discretion to determine whether justice requires granting leave under Rule 15(a).  *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1024 (5th Cir. 1981).  "A district court must possess a 'substantial reason' to deny a request for leave to amend, but 'leave to amend is by no means automatic.'"  *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987 (5th Cir. 2005) (quoting *Halbert v. City of Cherman*, 33 F.3d 526, 529 (5th Cir. 1994)).  The court considers "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment" in assessing whether to grant leave to amend.  *Id*. (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).  Futility alone is an acceptable basis to deny leave to amend, and an amendment is deemed futile if the case would be dismissed under Fed. R. Civ. Proc. 12(b)(6).  *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)); *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).

[48] *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981) (per curiam) (citing *Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120, 123 (5th Cir. 1980)).

[49] *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999) (citations omitted); *see also Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (citation omitted) ("Section 1983 does not create supervisory or *respondeat superior* liability.").

injury directly resulting from an order, policy, or directive implemented by the sheriff to create a vicarious liability under § 1983.[50]

Plaintiff appears to assert the same claim against all the named defendants (i.e., as a pretrial detainee, he should not have been housed with a convicted inmate) and seeks to hold them liable based on their positions at TPCC. He does not specify any alleged misconduct by any of these individuals. Further, he testified that, before being placed on E-3, he was asked whether he had any enemies, and he testified that no one had any basis to know that inmate Phar would attack him.

### 1. Misclassification/Housing

"Inmates have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates."[51] "Classification of inmates in Louisiana is a duty of the [jailer] and an inmate has no right to a particular classification under state law."[52] The classification of prisoners is an administrative function of the prison[53] and falls within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials.[54] Courts accord great deference to prison officials' administrative

---

[50] *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988).
[51] *Ricker v. Leapley*, 25 F.3d 1406, 1409 (8th Cir. 1994) (citation omitted); *accord Woods v. Edwards*, 51 F.3d 577, 582 (5th Cir. 1995) (citing *Hewitt v. Helms*, 459 U.S. 460, 469-70 (1983)).
[52] *Woods*, 51 F.3d at 581-82 (quotation omitted).
[53] *Jones v. Diamond*, 636 F.2d 1364, 1376 (5th Cir. 1981), *overruled on other grounds by Int'l Woodworkers of Am., AFL-CIO v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986)..
[54] *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), *abrogated on other grounds by Booth v. Churner*, 532 U.S. 731, 735 (2001); *accord Jones v. Roach*, No. 05-60530, 2006 WL 2474746, at *1 (5th Cir. 2006); *Wilkerson v. Stalder*, 329 F.3d 431, 436 (5th Cir. 2003); *see also Burciaga v. Cnty. of Lenawee*, 123 F. Supp. 2d 1076, 1078 (E.D. Mich. 2000) ("[T]he overwhelming weight of persuasive authority holds that unless the state has an intent to punish, or at least displays an indifference toward potential harm to an inmate, pre-trial detainees have no due process right to be housed separately from sentenced inmates.").

decisions and will not interfere with legitimate administration without a constitutional violation.[55] Inmates thus have no protectable property or liberty interest in custodial classification.

Although the housing of convicted inmates with pretrial detainees is not ideal, contrary to Plaintiff's contention, it is not *per se* unconstitutional to house a pretrial detainee with a convicted inmate. As the Fifth Circuit stated in *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981):

> The confinement of pretrial detainees indiscriminately with convicted persons is unconstitutional unless such a practice is 'reasonably related to the institution's interest in maintaining jail security,' or physical facilities do not permit their separation. Of course, if a particular pretrial detainee has a long record of prior convictions or is likely to be violent, imposition of greater security measures is warranted. . . . Nonetheless, pretrial detainees have a due process right to be considered individually to the extent security and space requirements permit.[56]

The housing of pretrial detainees with convicted inmates may raise constitutional concerns, but only if their classification together is handled indiscriminately without justification.[57] Courts recognize that, in some circumstances, housing of pretrial detainees with convicted inmates is permitted. Indeed, it is constitutionally permissible to house pretrial detainees who have extensive criminal histories with convicted prisoners rather than with pretrial detainees without criminal histories.[58] Thus, Plaintiff's effort to assert a § 1983 claim based on a *per se* constitutional claim barring pretrial detainees from convicted inmates fails. There is no hard and fast rule prohibiting the housing arrangements challenged by Plaintiff. As the Fifth Circuit has recognized, some circumstances permit housing pretrial detainees with convicted inmates.

---

[55] *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979) (citations omitted); *Smith v. Bingham*, 914 F.2d 740, 742 (5th Cir. 1990) (citations omitted).

[56] *Id.* at 1374 (quoting *Bell v. Wolfish*, 441 U.S. 520, 531 (1979)).

[57] *Pembroke v. Wood Cnty.*, 981 F.2d 225, 229 (5th Cir. 1993).

[58] *See ARPS v. Callahan*, No. 93–1066, 1994 WL 442486, at *3 (5th Cir. Aug. 2, 1994) ("[A] policy of classifying pretrial detainees with prior felony convictions with other convicted felons is reasonably related to the Jail's interest in maintaining jail security."); *Jones*, 636 F.2d. at 1374 (stating that imposition of greater security measures as to particular pretrial detainees is warranted if an inmate has a long criminal record, including violent crimes).

To state a claim for housing misclassification, Plaintiff "must allege that [Defendants'] their misclassification of him was due to deliberate indifference. That is, he must allege that [Defendants] knew of and disregarded a substantial risk of serious harm."[59] In this case, Truehill does not allege that the decision to place him in E-3 with a convicted inmate was made indiscriminately without justification.[60] Indeed, he testified he was placed in E-3 because his former dorm (E-4) was full when he was being released from the SHU, and he also testified to answering a series of questions, including whether he had any enemies in E-3, before the placement. Accordingly, his claim is subject to dismissal under 28 U.S.C. § 1915(e)(2), 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c).

### 2. Failure to Protect

To the extent Plaintiff's complaint could be read to assert a claim for failure to protect, a prisoner must show that "he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection."[61] "Prison officials are not . . . expected to prevent all inmate-on-inmate violence."[62] Deliberate indifference is shown when the defendant knew of and disregarded an excessive risk to the inmate's health or safety.[63]

Plaintiff testified during the *Spears* hearing that Phar had not threatened him. He further confirmed that he had no information to suggest that any jail official or the Sheriff knew that Phar posed a danger to him or knew that Plaintiff was in danger of attack by Phar. Accordingly, he has

---

[59] *Alderson v. Concordia Parish Corr. Facility,* 848 F.3d 415, 420 (5th Cir. 2017).

[60] *Brown v. Jones*, No. 11-1859, 2012 WL 2368814, at *3 (W.D. La. Mar. 15, 2012) (dismissing § 1983 claim by pretrial detainee attacked by convicted inmate and alleging improper housing assignment), *R.& R. adopted*, No. 11-1859, 2012 WL 2368809 (W.D. La. June 21, 2012); *see also Smith v. Gusman*, No. 14-1153, 2015 WL 2066517, at *5 (E.D. La. May 4, 2015).

[61] *Jones v. Greninger*, 188 F. 3d 322, 326 (5th Cir. 1999) (internal quotation marks and citation omitted).

[62] *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).

[63] *Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013).

not and cannot state a failure to protect claim cognizable under § 1983.  Accordingly, that claim is subject to dismissal under 28 U.S.C. § 1915(e)(2), 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c).

### C.  **Habeas Relief**

To the extent that Plaintiff's complaint can be read to challenge the fact of his confinement, he must pursue that claim on habeas corpus grounds.[64]  However, a habeas request is not properly asserted or sought in this civil rights action as release from custody is not an available remedy under § 1983."[65]  Truehill would have to present any habeas claims he may have in the proper habeas corpus proceeding, not this § 1983 complaint.

## IV.    **CONCLUSION**

Plaintiff's claim against Lafourche Parish fails because the Parish cannot be held vicariously liable without a showing that a specific parish policy caused Plaintiff some constitutional harm.  Likewise, Plaintiff's failure to set forth any facts to suggest that Sheriff Webre or any other of the identified officers were personally involved in any alleged constitutional violation precludes his effort to state a claim against them based on his housing assignment.

Even if Plaintiff had set forth facts suggesting any individual defendant's involvement in his placement, contrary to Plaintiff's assertion, it is not *per se* unconstitutional to house a pretrial detainee with a convicted inmate.  Further, Plaintiff does not allege that his placement in E-3 was done indiscriminately without justification.  Giving Plaintiff's claims the broadest possible reading and considering his testimony that he was placed in E-3 because E-4 was full when leaving the SHU after an incident on E-4, the existence of his prior convictions, TPCC's inquiry confirming

---

[64] *Hernandez v. Spencer*, 780 F.2d 504, 505 (5th Cir. 1986).

[65] *See Smith v. Lafourche Par*., No. 21-1714, 2021 WL 4975698, at *3 (E.D. La. Sep. 30, 2021) (discussing when habeas relief can be granted), *R.&R. adopted,* 2021 WL 4972374, at *1 (E.D. La. Oct. 26, 2021); *accord Lerille v. Lafourche Par*., No. 21-1729, 2021 WL 4975754, at *3 (E.D. La. Sep. 30, 2021), *R.&R. adopted,* 2021 WL 4972369, at *1 (E.D. La. Oct. 26, 2021).

he had no enemies on E-3, and his admission that no one had any basis to know that Phar would

attack him, Plaintiff cannot state a cognizable claim under § 1983 regarding his housing placement.

## V.    <u>RECOMMENDATIONS</u>

For the foregoing reasons,

**IT IS RECOMMENDED** that Truehill's request to add Warden Cantrelle Davis, Capt.

Carla Beck, Lt. Neil Ledet, Lt. Stanley Jones; Lt. Brett Exnicious, and Lt. Craig Dennison as

defendants through his §1983 Fact Order response and his *Spears* hearing testimony be **DENIED**

as futile.

**IT IS FURTHER RECOMMENDED** that plaintiff's claims against defendants

Lafourche Parish, and Sheriff Webre be **DISMISSED WITH PREJUDICE** as legally frivolous

under 28 U.S.C. § 1915(e)(2), 28 U.S.C. § 1915A, and 42 U.S.C. § 1997e(c).

A party's failure to file written objections to the proposed findings, conclusions, and

recommendation in a magistrate judge's report and recommendation within fourteen (14) days

after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court, provided that the party has been served with notice that such consequences will

result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.

1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[66]

New Orleans, Louisiana, this 22nd day of June, 2022.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[66] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).